IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LENA D. COTTON and PROFESSIONAL | ) | |
| ACCOUNTING LDC, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR PERMANENT INJUNCTION**

The United States of America, by and through undersigned counsel, complains and alleges as follows:

1. Plaintiff, the United States, brings this action to permanently enjoin Lena D. Cotton ("Cotton") and Professional Accounting Ldc, LLC (collectively, "Defendants") from:

(a) Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents and forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(b) Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and/or 6701; and

(c) Engaging in conduct that substantially interferes with the proper administration and enforcement of the tax laws.

2. This action also seeks an order, under 26 U.S.C. § 7402(a), requiring Defendants to disgorge to the United States the gross receipts they have obtained for the preparation of federal tax returns making grossly incompetent, negligent, reckless, and/or fraudulent claims.

JURISDICTION AND VENUE

3. This action is authorized and requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, and is commenced at the direction of the Attorney General of the United States in accordance with 26 U.S.C. § 7401.

4. This Court has jurisdiction pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1340 and 1345.

5. Venue is proper in this Court pursuant to 26 U.S.C. § 7407(a) and 28 U.S.C. § 1391 because Defendants prepare tax returns within this judicial district and a substantial part of the events giving rise to this claim occurred within this judicial district.

DEFENDANTS

6. Cotton has worked as a paid tax preparer since at least 2008. She resides in Wellington, FL and operates a tax return preparation business in West Palm Beach, FL.

7. Cotton holds no tax-related professional certifications. During an investigation of her practices as a return preparer, she told the IRS that she previously managed a coffee store, worked at two plastic molding companies, and served as a sales associate at a retail store. She holds a GED and a certification as a Radiology Technician. In addition to her job as a tax preparer, she works part time at a health care company.

8. Cotton took a class in or around 2006 at H&R Block to learn how to prepare federal income tax returns. She has no other tax or accounting education. She told the IRS that

she receives annual training from Drake Software, which she uses to prepare returns, but she has not received any other training in tax or accounting.

9. Professional Accounting Ldc, LLC, located at 3676 Collin Drive, West Palm Beach, FL 33406, is Cotton's business. The business was incorporated by Cotton in 2008 and, according to state records, is a corporation in good standing. It employs approximately nine individuals, but Cotton is the sole shareholder and registered agent. Cotton is the business's main return preparer, though one of the other employees has at times also prepared returns.

10. As a paid return preparer, Cotton obtained from the IRS a Preparer Tax Identification Number ("PTIN") of PXXXX4401. Additionally, Cotton obtained for her business the Electronic Filing Information Numbers ("EFINs") of XX3983 and XX2015 and an Employer Identification Number ("EIN") of XX-XXX7986. The business also has a third EFIN, XX4594, but no returns have been filed using that number.

DEFENDANTS' ACTIVITIES

11. Defendants prepare thousands of federal income tax returns each filing season. For instance, from 2012 through 2016 (coinciding primarily with tax years 2011 through 2015), Defendants prepared approximately 18,046 individual tax returns. Defendants also prepared a smaller number of business tax returns during that period. Defendants typically charge between $89 and $269 per return, depending on its complexity. These fees are, in some cases, deducted from the refund claimed so that the customer only receives the refund net of Defendants' fees.

12. Cotton purports to review and approve every return filed by her business, and she personally signs the overwhelming majority of them. For instance, she signed 99.7 percent of returns her business filed in 2015. Cotton also told the IRS that, except for individuals filing a

simple tax return (*i.e.*, a Form 1040EZ, which is reserved for certain single and joint filers with no dependents), she personally meets with all customers before filing their returns.

13. A review of returns filed by Defendants has uncovered a high rate of errors. In particular, the IRS reviewed 1,034 returns Defendants filed for tax years 2012 through 2014 and found that 671 misstated the taxpayers' liabilities and/or refunds. That is an error rate of 64.9 percent.

14. The IRS determined that these 671 returns understated the taxes owed and/or the refunds due by a net total of $918,361. Given the large number of returns Defendants have prepared and filed over the past several years, the financial harm to the United States caused by Defendants is substantial.

15. The IRS has been aided in identifying Defendants' fraudulent practices by their customers, several of whom have said that Defendants knew of facts that would render the returns they filed false. The descriptions below of Defendants' practices contain references to some of these customer accounts. To protect the identities of those individuals, the complaint refers to each customer by number, *e.g.*, Customer 1 (abbreviated to C1).

16. One of Defendants' signature frauds is claiming bogus education credits (American opportunity and lifetime learning credits) for customers who either did not incur any education expenses or incurred them only at ineligible institutions. The IRS has identified more than 100 returns prepared by Defendants between tax years 2012 and 2014 that improperly claimed American opportunity and/or lifelong learning credits. The credits were disallowed because:

a. Defendants frequently prepared and filed returns claiming education credits for customers for whom no Form 1098-T was submitted by any educational institution substantiating the tuition the returns reflected.

b. Many returns prepared by Defendants claimed education credits for attendance at Palm Beach State College (previously known as Palm Beach Community College). However, an IRS summons to the school's custodian of records revealed that Defendants claimed credits for at least 31 individuals who never attended the school during the relevant time periods even though Defendants represented that they had.

c. Similarly, on a 2012 Form 1040 income tax return for C1 and her husband, Defendants reported that C1 attended the school MedVance and paid at least $4,000 in qualified education expenses. C1, however, never attended that school and told the IRS that she is unaware of where the $4,000 figure came from.

d. Additionally, on a 2011 Form 1040 income tax return for C2 and C3, Defendants falsely claimed these taxpayers spent at least $4,000 on qualified education expenses for their son, who was in high school at the time and whose expenses did not qualify. C2 and C3 later filed a complaint against Defendants for filing a false return. They told the IRS that they were unaware that expenses needed to be for higher education and that Defendants had merely asked whether their son was in school, without asking what type of school.

17. Defendants also overstate the earned income tax credit ("EITC") claimed for customers whose returns they prepare, and the IRS has identified more than 250 instances of Defendants doing so between tax years 2012 and 2014. The EITC is a benefit for working

taxpayers with low to moderate income. The amount of EITC for which taxpayers may qualify increases in relation to their "earned income" until they reach a certain threshold, over which they become ineligible to claim the credit. The EITC of a qualifying taxpayer increases with each additional dependent claimed, up to three dependents. Defendants increase the EITC claimed on returns they prepare in part by falsely claiming more dependents than their customers actually have. To illustrate two examples:

a. For the 2012 Form 1040 income tax return for C4, Defendants claimed her daughter as a dependent for purposes of the EITC even though the daughter did not live with C4 that year. In preparing the return, Defendants did not ask C4 about where the daughter lived.

b. For the 2012 Form 1040 income tax return for C5, Defendants claimed two dependents for purposes of the EITC even though neither was qualifying. The first, C5's son, was not qualifying because he was over 19 and not a full-time student. The second, C5's nephew, did not even live with C5 in 2012.

18. Another common fraud has been misreporting taxpayers' filing statuses. The IRS has identified more than 25 instances of Defendants employing this scheme between tax years 2012 and 2014. It frequently involves fraudulently identifying filers as heads of households. To illustrate this abuse:

a. The head of household status is only available to taxpayers who are considered unmarried (either because they do not have a spouse or because they do but still meet certain criteria under which the IRS will consider them to be unmarried) with qualifying children or dependents.

b. The purpose of fraudulently claiming the head of household status is to increase the taxpayers' standard deductions. For instance, for tax year 2017 an individual who is married and files separately can claim a standard deduction of $6,350. By comparison, a head of household filer is entitled to a standard deduction of $9,350. By wrongfully claiming head of household status to increase the standard deductions, Defendants cause their customers to underreport their taxes and in some cases to get improper refunds.

c. In one example, Defendants filed separate Form 1040 income tax returns for 2012 for C6 and C7, a married couple, and claimed the head of household status for both of them despite knowing that they were married and did not qualify for the filing status. Defendants completed the returns for C6 and C7 on the same day and claimed the same child on both returns to justify the head of household designations.

d. Defendants also wrongly claimed the head of household status for C8 on Form 1040 income tax returns for 2013 and 2014. As part of the fraudulent preparation of these returns, Cotton falsely told C8 that she could file for head of household status even though she did not have a qualifying child or dependent. Specifically, Cotton incorrectly stated that C8 was eligible for the filing status merely because she earned more money than her boyfriend, who lived with her. On the originally filed returns, this fraud did not directly lead to an understatement because Defendants itemized C8's deductions rather than relying on the standard deductions. However, during an examination, the IRS disallowed the itemized deductions and recalculated C8's liabilities using

the standard deductions. Had the IRS not discovered the bogus head of household claims, C8's standard deductions would have been higher, resulting in an understatement of the taxes actually due each year.

19. Another way Defendants understate their customers' tax liabilities is by falsely claiming that customers use their personal vehicles for business purposes, or by inflating the amount the customers are entitled to deduct for business use. To illustrate:

a. For the 2013 Form 1040 income tax return for C8 (the same customer referenced above), Defendants claimed $9,266 in mileage expenses and a depreciation deduction of $2,950. Both claims were improper because C8 was eligible for employer reimbursement for business travel. Moreover, even if C8's employer did not offer reimbursement, C8 could claim either mileage or depreciation, but not both.

b. On a 2015 Form 1040 income tax return for C9 and his wife, Defendants reported his car as being used 60 percent for business purposes despite knowing it was used only for personal reasons.

c. Though C10 used his car for both business and personal purposes and did not represent otherwise to Cotton, Defendants reported it on his 2015 Form 1040 income tax return as being used 100 percent for business purposes.

20. Defendants' fraudulent activities are not limited to these schemes. Indeed, they have shown a willingness to invent credits and deductions on a whole host of subjects. For instance:

a. On a 2015 Form 1040 income tax return for C11, Defendants claimed $690 in unjustified dependent care credits based on $3,522 in supposed child-care

expenses that C11 did not incur. C11 did not tell Defendants that he incurred any child-care expenses and does not know the basis for the credits.

b. In the 2015 return for C9 and his wife (referenced above), Defendants claimed $12,909 in bogus mortgage interest deductions. C9 and his wife lived in a home that was titled in the names of C9's parents, and the supposed interest payments were not listed on any Form 1098 (a mortgage interest statement required to be filled out by mortgage companies when an individual pays more than $600 in mortgage interest in a year) for either C9 or his wife.

c. On the 2015 return for C10 (referenced above), Defendants included $500 in unreimbursed employee expenses for fictitious "Uniforms and Upkeep costs." C10 did not wear a uniform to work.

21. Additionally, Defendants have frequently underreported their customers' taxable income. The IRS has identified 31 instances of underreported retirement income and 27 instances of underreported earned income for returns Defendants prepared between tax years 2012 and 2014.

HARM TO THE UNITED STATES

22. Defendants' pattern of preparing returns that understate their customers' taxes and/or overstate their refunds, through the schemes described above, has resulted in the loss of significant federal tax revenue.

23. In many instances, Defendants' understatement of their customers' liabilities and their other fraudulent practices caused the United States to issue refunds that the customers were not entitled to receive.

24. Based on the returns it has examined, the IRS estimates that the United States has lost millions of dollars in tax revenue from Defendants' consistent understatement of liabilities/overstatement of refunds. In addition, the United States has had to bear the substantial cost of examining the returns Defendants have prepared and collecting the understated liabilities from their customers.

25. In addition to the direct harm caused by preparing tax returns that fraudulently understate customers' tax liabilities and/or overstate their refunds, Defendants' activities encourage noncompliance by their customers with the internal revenue laws. Similarly, Defendants' fraudulent use of the earned income tax credit undermines public confidence in a statutory credit meant to encourage low-income workers with young children to maintain employment.

**COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407**
**FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. §§ 6694 AND 6695**

26. The United States incorporates by reference the allegations in paragraphs 1 through 25.

27. Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a person who is a tax return preparer from engaging in certain conduct or from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, *inter alia*, the following:

(a) Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund due to an unreasonable position that the preparer knew or should have known was unreasonable;

(b) Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund due to willful or reckless conduct;

(c) Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a tax return preparer who does not exercise due diligence in determining eligibility for earned income tax credits and, as of 2016, for American opportunity tax credits and/or child tax credits;

(d) Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

28. In order for a court to issue such an injunction, the court must find that:

(a) The tax return preparer engaged in the prohibited conduct; and

(b) Injunctive relief is appropriate to prevent the recurrence of such conduct.

29. If a tax return preparer's conduct is continual or repeated and the court finds that a narrower injunction would not be sufficient to prevent the preparer's interference with the proper administration of the internal revenue laws, the court may permanently enjoin the person from acting as a tax return preparer. *See* 26 U.S.C. § 7407(b).

30. Defendants have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing returns that understate the filers' tax liabilities and overstate their refunds. As described above, Defendants have prepared returns that claim deductions for expenses that were not incurred by the taxpayers and credits to which the taxpayers are not entitled. Defendants have done so with the knowledge that the positions they

took on the returns were unreasonable and lacked substantial authority. Defendants have thus engaged in conduct subject to penalty under 26 U.S.C. § 6694(a).

31. Additionally, Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by willfully understating customers' liabilities and acting with a reckless and intentional disregard of rules and regulations.

32. Defendants have also engaged in conduct subject to penalty under 26 U.S.C. § 6695(g) by repeatedly failing to exercise due diligence in determining the eligibility of their customers to claim earned income tax credits.

33. Defendants' conduct substantially interferes with the administration of the internal revenue laws. Injunctive relief is necessary to prevent this misconduct because, absent an injunction, Defendants are likely to continue preparing false federal income tax returns.

34. A narrower injunction would be insufficient to prevent Defendants' interference with the administration of the internal revenue laws. Defendants prepare returns understating the filers' liabilities through multiple schemes that report false information on their customers' tax returns. In addition, the IRS may not yet have identified all of the schemes used by Defendants to understate liabilities. Failure to permanently enjoin Defendants will require the IRS to spend additional resources to uncover all of their future schemes. The harm resulting from these schemes includes both the expenditure of these resources and the revenue loss caused by the improper deductions and credits Defendants claim on returns they prepare. Accordingly, only a permanent injunction is sufficient to prevent future harm. Each Defendant should be permanently enjoined from acting as a tax return preparer.

**COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408**
**FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. § 6701**

35. The United States incorporates by reference the allegations contained in paragraphs 1 through 25.

36. Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701, which penalizes a person who aids or assists in the preparation of tax returns that the person knows will result in an understatement of tax liability.

37. Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing income tax returns that claim credits and deductions that they knew to be improper, false, and/or inflated.

38. Defendants' repeated actions fall within 26 U.S.C. § 7408, and injunctive relief is appropriate to prevent recurrence of this conduct.

**COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402 FOR UNLAWFUL INTERFERENCE WITH THE ENFORCEMENT OF INTERNAL REVENUE LAWS**

39. The United States incorporates by reference the allegations contained in paragraphs 1 through 25.

40. Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

41. Defendants have repeatedly and continually engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

42. If Defendants continue to act as tax return preparers, their conduct will result in irreparable harm to the United States, and the United States has no adequate remedy at law.

43. Defendants' conduct has caused and will continue to cause substantial tax losses to the United States Treasury, much of which may be undiscovered and unrecoverable. Moreover, unless Defendants are enjoined from preparing returns, the IRS will have to devote substantial and unrecoverable time and resources auditing their customers individually to detect understated liabilities and overstated refund claims.

44. The detection and audit of erroneous tax credits and deductions claimed on returns prepared by Defendants would be a significant burden on IRS resources.

**COUNT IV: DISGORGEMENT UNDER 26 U.S.C. § 7402(a)**

45. The United States incorporates by reference the allegations contained in paragraphs 1 through 25.

46. Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

47. Defendants' conduct substantially interferes with the enforcement of the internal revenue laws. Specifically, Defendants have caused the United States to issue tax refunds to individuals not entitled to receive them. Without Defendants' conduct, the United States would not have issued these bogus refunds.

48. Defendants have unjustly profited from their misconduct at the expense of the United States. In particular, they frequently subtracted their fees from their customers' improper refunds.

49. Defendants are not entitled to these ill-gotten gains. Using its broad authority under § 7402(a), the Court should enter an order requiring Defendants to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) they have obtained for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims.

WHEREFORE, Plaintiff, the United States of America, respectfully prays for the following:

A. That the Court find that Defendants have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and that injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct;

B. That the Court find that Defendants have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. § 6701 and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

C. That the Court find that Defendants have repeatedly and continually engaged in conduct that substantially interferes with the proper enforcement and administration of the internal revenue laws and that injunctive relief is appropriate under 26 U.S.C. § 7402(a) to prevent recurrence of that conduct;

D. That the Court enter a permanent injunction prohibiting Defendants and any other persons working in concert or participation with them from directly or indirectly:

(1) Preparing, assisting in the preparation of, or directing the preparation of federal income tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(2) Transferring, selling, or assigning their customer lists and/or other customer information;

(3) Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and/or 6701;

(4) Engaging in conduct that substantially interferes with the proper administration and enforcement of the tax laws.

E. That the Court enter an injunction requiring Cotton, at her own expense:

(1) To send by certified mail, return receipt requested, a copy of the final injunction entered against Defendants in this action, as well as a copy of the Complaint setting forth the allegations as to how Defendants fraudulently prepared federal income tax returns, to each person for whom Defendants prepared federal income tax returns or any other federal tax forms after January 1, 2013;

(2) To turn over to the United States copies of all returns and claims for refund that Defendants prepared after January 1, 2013;

(3) To surrender to the Secretary of the Treasury or his delegate any and all PTINs held by, assigned to, or used by each Defendant pursuant to 26 U.S.C. § 6109, and the EFINs held by, assigned to, or used by each Defendant;

(4) To prominently post a copy of the injunction in Defendants' place of business where tax returns were prepared by Defendants;

(5) To deliver a copy of the injunction to Defendants' employees, contractors, and vendors;

(6) To file a sworn statement with the Court evidencing Defendants' compliance with the foregoing directives within forty-five (45) days of entry of the final injunction in this action; and

(7) To keep records of Defendants' compliance with the foregoing directives, which may be produced to the Court, if requested, or the United States pursuant to paragraph G, *infra*;

F. That the Court ender an order, pursuant to 26 U.S.C. § 7402(a), requiring Defendants to disgorge to the United States the gross receipts (the amount of which is to be determined by the Court) that Defendants have obtained (in the form of fees subtracted from customers' tax refunds) for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims.

G. That the Court enter an order allowing the United States to monitor Defendants' compliance with the injunction and to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure; and

H. That the Court grant the United States such other and further relief as the Court deems appropriate.

Date: April 25, 2017

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division

By: s/ Robert S. Silverblatt
ROBERT S. SILVERBLATT
Florida Special Bar Number A5502257
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-514-8682 (v)
202-514-4963 (f)
Robert.S.Silverblatt@usdoj.gov

Of Counsel:

BENJAMIN GREENBERG
Acting United States Attorney