UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 17-80518-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LENA D. COTTON and PROFESSIONAL
ACCOUNTING LDC, LLC,

    Defendants.
_____/

## FINAL JUDGMENT

THIS CAUSE comes before the Court upon the Parties' Agreed Motion for Entry of Judgment, filed November 27, 2017. (DE 38). The Parties agreed by stipulation and consent to a permanent injunction and attached the terms of their agreement to the Motion. (DE 38-1). The Court enters this Order and Judgment in accordance with the Parties' agreement.

Plaintiff, the United States of America, and Defendants, Lena D. Cotton and Professional Accounting LDC, LLC, stipulate and agree as follows:

1. The United States of America filed a complaint for a permanent injunction under 26 U.S.C. §§ 7402(a), 7407, and 7408 and for disgorgement against Lena D. Cotton and Professional Accounting LDC, LLC (collectively "Defendants").

2. Defendants filed an Answer denying the substantive allegations in the Complaint.

3. The parties agree, for purposes of this order, that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7402(a) and 7407.

4. Defendants agree that they have engaged in conduct that may be subject to penalty under 26 U.S.C. §§ 6694(a) and 6701 by preparing returns that claimed the head of household filing status for taxpayers that Defendants knew or had reason to know were not eligible to be head of household because a) they were married and resided with their spouse; or b) they did not support a qualifying person. Defendants also agree that they have claimed multiple heads of household at the same address without ascertaining that the taxpayers maintained separate households.

5. Defendants agree that they have engaged in conduct that may be subject to penalty under 26 U.S.C. §§ 6694(a) and 6701 by preparing returns that claimed residential energy credits for taxpayers that Defendants knew or had reason to know did not incur qualified solar electric property or qualified small wind energy property costs.

6. Defendants agree that they have engaged in conduct that may be subject to penalty under 26 U.S.C. §§ 6694(a) and 6701 by preparing returns that claimed an American opportunity tax credit for taxpayers that Defendants knew or had reason to know were not eligible to claim the credit.

7. Defendants agree that they have engaged in conduct that may be subject to penalty under 26 U.S.C. §§ 6694(a) and 6701 by preparing returns that claimed on Schedule A and/or C of Form 1040 duplicative deductions for mileage and depreciation for taxpayers that Defendants knew or had reason to know were not entitled to deduct both.

8. Defendants agree that they have engaged in conduct that may be subject to penalty under 26 U.S.C. §§ 6694(a) and 6701 by preparing returns that claimed child and dependent care credits for taxpayers that Defendants knew or had reason to know did not incur eligible expenses.

9. Defendants agree to waive the entry of findings of fact and conclusions of law under Rules 52 and 65 of the Federal Rules of Civil Procedure, to consent to the entry—pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408—of this permanent injunction as to specific conduct without further notice, and to be bound by its terms.

10. Defendants agree to pay to the United States $65,000 in fees they received from refunds issued by the United States Treasury for returns they prepared that may have understated taxes and/or overstated refunds by claiming deductions and credits Defendants knew or had reason to know were incorrect. Additionally, Defendants further agree not to contest the assessment by the Secretary of the Treasury of $65,000 in penalties under 26 U.S.C. § 6701. Defendants further understand and agree that:

   a. The stipulated order for permanent injunction as to certain conduct will be entered under Fed. R. Civ. P. 65 and will result in the entry, without further notice, of a final judgment in this matter;

   b. Defendants waive the right to appeal from the stipulated order for permanent injunction as to specific conduct;

   c. The parties will bear their own costs, including any attorneys' fees or other expenses of this litigation;

   d. The Court will retain jurisdiction over this matter for the purpose of implementing and enforcing the permanent injunction by stipulation and consent;

   e. If Defendants violate the permanent injunction, they may be subject to civil and criminal sanctions for contempt of court. The United States may seek, among other remedies for contempt, a permanent injunction barring Defendants from tax return preparation;

   f. Defendants shall comply with the specific directives in the permanent injunction order requiring them, as set forth below, to (i) pay for a compliance monitor and (ii) post notice of the injunction in their office and inform customers of the injunction;

   g. The United States may conduct post-judgment discovery to monitor compliance with the permanent injunction as to specific conduct; and

    h. Entry of the permanent injunction as to specific conduct resolves only (but completely) this civil action for injunction and disgorgement, and, except as detailed in a written agreement between the parties, it neither precludes the government from pursuing any future civil or criminal matters or proceedings nor precludes Defendants from contesting allegations of liability in any matter or proceeding.

I. Accordingly, it is **HEREBY STIPULATED, ORDERED, and ADJUDGED** pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408 that Defendants are PERMANENTLY ENJOINED from directly or indirectly:

    A. Preparing, filing, or assisting in the preparation or filing of federal tax returns, amended returns, or any other related documents or forms that contain an understatement of tax liability or an overstatement of a refund due to a position that Defendants knew or should have known was unreasonable; and

    B. Preparing, filing, or assisting in the preparation or filing of federal tax returns, amended returns, or any other related documents or forms that contain an understatement of tax liability or an overstatement of a refund due to willful or reckless conduct.

II. It is **FURTHER STIPULATED, ORDERED, and ADJUDGED** pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408 that:

    A. With respect to the head of household filing status, Defendants are PERMANENTLY ENJOINED from directly or indirectly:

        1. Claiming the head of household status for married taxpayers who lived together during any portion of the last six months of the tax year;

        2. Claiming the head of household status for taxpayers who do did not pay more than half of the cost to keep up the household for a qualifying person;

3. Claiming the head of household status for taxpayers who did not have a qualifying person living with them for more than half of the tax year;

4. Claiming multiple heads of household for taxpayers residing at the same address in the same tax year without first obtaining (i) proper documentation that multiple households exist within that address and (ii) a signed statement from the taxpayer affirming that the prerequisites for claiming head of household are satisfied. To comply with this provision, Defendants must maintain a list of the names and addresses of all taxpayers for whom they prepare returns claiming the head of household filing status and must reference that list before preparing any head of household returns. If a taxpayer lives at the same address as another person for whom Defendants have prepared a head of household return in the same tax year, the documentation and signed statement requirements will apply; and

5. Using the same qualifying person for the head of household status for multiple taxpayers within a single tax year.

B. With respect to residential energy credits, Defendants are PERMANENTLY ENJOINED from directly or indirectly:

1. Claiming qualified solar energy property costs for products that do not generate solar energy;

2. Claiming qualified small wind energy property costs for any products other than qualifying wind turbines; and

3. Claiming any residential energy credits for any taxpayer without documentation from that taxpayer of the purchase of an energy-efficient product that qualifies for a deduction.

C. With respect to education credits, Defendants are PERMANENTLY ENJOINED from directly or indirectly:

1. Claiming the American opportunity tax credit or lifetime learning tax credit for any taxpayer who does not provide Defendants with a valid Form 1098-T issued by an eligible institution;

2. Claiming the American opportunity tax credit or lifetime learning tax credit at institutions that are not eligible to participate in a student aid program run by the U.S. Department of Education;

3. Claiming the American opportunity tax credit or lifetime learning tax credit for expenses that are covered by scholarships or grants;

4. Claiming the American opportunity tax credit for the same student for more than four years;

5. Claiming the American opportunity tax credit for students who do not meet the attendance requirements at eligible institutions; and

6. Claiming the American opportunity credit without complying with the due diligence requirements of 26 U.S.C. § 6695(g).

D. With respect to deductions on Schedules A and C of Form 1040, Defendants are PERMANENTLY ENJOINED from directly or indirectly:

1. Claiming business expenses, including but not limited to mileage, depreciation, and uniforms, without first obtaining documentation that the taxpayer incurred the expenses;

2. Claiming mileage or depreciation deductions for expenses incurred by taxpayers when traveling between their homes and their main or regular places of work (*i.e.*, commuting expenses);

3. Claiming depreciation without retaining a copy of the return where the taxpayer signs his or her initials next to the percentage business use of the vehicle;

    4. Claiming mileage without retaining a copy of the return where the taxpayer signs his or her initials next to the number of business miles;

    5. Claiming both mileage and depreciation deductions for the same vehicle in the same tax year;

    6. Claiming deductions for phone or Internet expenses without retaining a copy of the return where the taxpayer signs his or her initials next to the claimed expenses; and

    7. Claiming mileage on Schedule A without completing and filing a Form 2106.

E. With respect to child and dependent care credits, Defendants are PERMANENTLY ENJOINED from directly or indirectly:

    1. Claiming the credit for a taxpayer who does not have a qualifying child (one that is under 13 whom the taxpayer can claim as a dependent) or any other qualifying person as listed on the instructions to Form 2441;

    2. Claiming the credit for private school tuition for children in grade levels kindergarten or above; and

    3. Claiming the credit without documentation that the taxpayer incurred the expenses.

III. It is **FURTHER ORDERED** that Defendants shall, in accordance with a payment schedule separately agreed to by the parties, pay $65,000 in disgorgement to the United States.

IV. It is **FURTHER ORDERED** that Defendants shall retain for at least three years all customer files, including records of the documentation required by this injunction, and that they shall make such files and documentation available for inspection by the United States upon request.

V. It is **FURTHER ORDERED** that for the purpose of determining and/or securing compliance with this permanent injunction as to specific conduct, a neutral monitor shall be selected by Defendants, and shall be approved by a representative designated by the United States Department of Justice, to monitor Defendants' tax preparation activities. Defendants shall execute all necessary

consent forms required under 26 U.S.C. § 6103 for the IRS and the United States to communicate directly with the neutral monitor. The parties agree that the neutral monitor forever shall be immune from liability to the United States or to Defendants in respect of the monitoring duties described in this order. This monitoring requirement will remain in effect through April 15, 2021. However, if the neutral monitor, in his or her sole discretion, states in writing that the final year of monitoring is not necessary to ensure compliance with this injunction, the requirement shall end on April 15, 2020. The neutral monitor shall be an outside entity or person and shall:

A. Be an enrolled agent or certified public accountant who is compensated solely by Defendants;

B. Commence monitoring activities on the day before Defendants begin preparing or filing federal tax returns for others during each tax season and cease monitoring activities no earlier than April 15 of each year (the "Annual Monitoring Period"). For as long as the monitoring requirement remains in effect, Defendants are enjoined from operating a tax return preparation business without a neutral monitor in place during the Annual Monitoring Period;

C. Have access to all records, employees, and customers of Defendants, including permission to observe customer interviews conducted by Defendants' tax return preparers;

D. Select, inspect, and review a minimum sample of 50 federal income tax returns prepared by Defendants during the first 10 days of each Annual Monitoring Period, along with the corresponding customer files, to ensure substantiation of information reported on each tax return and to monitor compliance with this injunction as to specific conduct. At least 50 percent of the reviewed returns will have one or more of the following claims: head

of household, residential energy credits, education credits, Schedule A or C deductions, or child and dependent care credits;

E.  Select, inspect, and review a minimum sample of 50 federal income tax returns prepared by Defendants on the 11th to 25th day of each Annual Monitoring Period, along with the corresponding customer files, to ensure substantiation of information reported on each tax return and to monitor compliance with this injunction. At least 50 percent of the reviewed returns will have one or more of the following claims: head of household, residential energy credits, education credits, Schedule A or C deductions, or child and dependent care credits;

F.  Select, inspect, and review a minimum sample of 30 federal income tax returns prepared by Defendants for the remainder of each Annual Monitoring Period, along with the corresponding customer files, to ensure substantiation of information reported on each tax return and to monitor compliance with this injunction. At least 50 percent of the reviewed returns will have one or more of the following claims: head of household, residential energy credits, education credits, Schedule A or C deductions, or child and dependent care credits;

G.  Ensure, in connection with the 50 percent sampling requirements in Paragraphs D–F above, that the group of at least 130 returns selected, inspected, and reviewed during the Annual Monitoring Period includes at least 10 instances of each of the following claims: head of household, residential energy credits, education credits, Schedule A or C deductions, and child and dependent care credits;

H.  Provide a written report to the designated representative of the United States, within thirty days of completion of each Annual Monitoring Period, setting forth in detail the manner and form in which Defendants have or have not complied with the terms of this

injunction, including the results of the review of tax returns, the identity of any customers whose tax returns fail to comply with the terms of this injunction, and the identity of the tax return preparers who prepared those non-compliant returns, as well as the amount of fees or other amounts charged to each customer with a non-compliant return, and any other findings. In addition to the annual written report, the monitor shall immediately notify the designated representative of the United States upon discovering any violations of this injunction.

VI. It is **FURTHER ORDERED** that Defendant Cotton shall not permit any other person to prepare, file, or assist in the preparation or filing of federal tax returns, amended returns, or any other related documents using a preparer tax identification number assigned to Defendant Cotton.

VII. It is **FURTHER ORDERED** that Defendants shall prominently (so that it is both legible and visible) post in their offices a notice with dimensions of at least 11 by 17 inches, with language approved by a representative designated by the United States Department of Justice, regarding this injunction and that they shall be enjoined from preparing any returns for customers without first notifying them, either verbally or in writing, about this injunction and informing them where the notice is posted. The requirement to post notice and inform customers will end at the same time as the monitoring obligation described in Paragraph V above unless the Court determines in the interim that Defendants have violated the injunction as to specific conduct and that the requirement to post notice and inform customers should remain in effect for a longer duration. Within 45 days after entry of this order, Defendants shall provide the United States with a sworn statement that the notice has been posted.

VIII. It is **FURTHER ORDERED** that the United States shall be permitted to conduct post-judgment discovery to monitor compliance with this injunction.

IX. It is **FURTHER ORDERED** that the Court will retain jurisdiction over this action for purpose of implementing and enforcing this order and any additional orders necessary and appropriate to the public interest.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 28 day of November, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies furnished to: All counsel of record